UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MICHAEL PATRICK STEVENS,

      Petitioner,

vs.            Case No.  5:11-cv-466-Oc-29TBS

WARDEN, FCC COLEMAN-LOW,

      Respondent.
_____

**OPINION AND ORDER**

**I.  Status**

  Michael Patrick Stevens, a federal prisoner incarcerated at FCC-Coleman, initiated this action pro se by filing a "Petition Under 28 U.S.C. § 2241 for Writ of Habeas Corpus" (Doc. #1, Petition) on August 11, 2011. The Petition challenges a disciplinary report and hearing during which Petitioner was found guilty of violating "Code 110" for refusing to give a sample of urine.  Petition at 1.  Petitioner argues that he did not refuse to provide urine, but instead could not provide the urine sample within the two hour window.  See generally id. (stating he has "trouble urinating under supervision," he was dehydrated, he has a medical condition known as a "shy bladder," and has prostate issues).  Petitioner also submits that correctional officials failed to comply with their own policies, specifically "PS 6060.08," which permits an inmate subject to a urine sample to try to provide the sample in a "dry cell" and without direct supervision. Id. at 4.  As a result of the alleged false disciplinary report,

Petitioner states that he lost good time credit and was subjected to disciplinary action. Id. at 3. As relief, Petitioner requests removal of all disciplinary sanctions and good time credit restored. Id.

Respondents filed a Response opposing the Petition (Doc. #7, Response) and attach supporting exhibits (Doc. #7-1, Exhs. 1-7). Respondents argue that the Due Process protections set forth in Wolff v. McDonnell, 418 U.S. 539 (1974) and Sandin v. Conner, 515 U.S. 472 (1995) were not violated and there was sufficient evidence upon which the Bureau of Prisons based its decision to find Petitioner guilty of the disciplinary infraction. See generally Response at 7 (citing Void v. Warden Fort Dix FCI, 345 F. App'x 818, 820-821 (3d Cir. 2009)(unpublished opinion)(affirming the district court's decision to deny the petition because there was no evidence of Petitioner's alleged medical condition in his file at the time he was asked to give the urine sample or at the time of the disciplinary hearing). Turning to Petitioner's contentions that he had a medical issue that prevented the urine sample, Respondent points out that Petitioner initially accepted responsibility for not providing the urine sample, then later at the disciplinary hearing claimed he was unable to provide a urine sample due to a medical issue, but presented no evidence of such at the time. Respondent points out that it was only after the disciplinary hearing that Petitioner was diagnosed with benign

prostatic hyperplesia as a result of his self-reported symptoms a year after the hearing on March 31, 2009.  Id. at 8, n.3.

In Reply, Petitioner submits that Respondents failed to address his argument in the Petition that correctional officials failed to comply with their own policy and provide him a "dry cell" to attempt the urine sample.  Reply at 2.

## II.  Factual History and Procedural Background

On March 17, 2008, Petitioner was ordered to submit a urine sample as required by Bureau of Prisons' ("BOP") policy.[1] Exh. 2, ¶11. BOP staff informed Petitioner that he had two hours to submit a urine screening, but Petitioner failed to provide the urine sample stating, "I can't go with someone watching me."  Id.  BOP staff wrote an incident report against Petitioner for violating BOP disciplinary code 110, Refusing to Provide a Urine Sample.  Id. at ¶9, ¶11.

A BOP Lieutenant investigated the charges, and interviewed Petitioner during the course of the investigation.  Exh. 2, ¶24-¶27.

---

[1] BOP Policy 6060.08 entitled "Urine Surveillance and Narcotic Identification," explains under the "procedures" section that an inmate shall be given a two-hour period to provide a urine sample, under direct supervision to prevent tampering of the sample. Id. at 4.  Staff shall offer the inmate eight ounces of water at the beginning of the two-hour period. Id.  An inmate is presumed to be unwilling if the inmate fails to provide the urine sample within the allotted time period. Id.  A sample is considered "full" when it contains 60 cc or 2 oz. Id.  Additional time may be provided to an inmate who is dehydrated or who has a documented medical or psychological problem. Id.  Further, according to the policy, staff may considering supervising indirectly if an inmate claims to be unwilling to provide the urine sample under direct supervision. Id. (emphasis added).

The Lieutenant advised Petitioner of his rights, at which the Petitioner stated, "I was not able to pee." Id. ¶23, ¶24. Petitioner was provided with a copy of the incident report on March 18, 2008, and the matter was referred to the Unit Disciplinary Committee ("UDC") for further action. Id. at ¶14-¶16, ¶26-¶27. During the UDC hearing on March 20, 2008, Petitioner stated "I was so nervous I couldn't do it." The UDC determined that the matter needed to be referred to the Discipline Hearings Officer ("DHO"). Exh. 2 ¶17-¶21.

Petitioner was notified that there would be a disciplinary hearing, and was again advised of his rights during the disciplinary process. Exh. 3; Exh. 4. Petitioner did not request to have witnesses present to testify on his behalf, or a staff representative assigned to assist him. Exh. 3; Exh. 5.

The DHO commenced the hearing on April 30, 2008. Exh. 5. Petitioner denied the charges against him, asserting for the first time that he couldn't urinate because he was having problems with his prostate. Id. at ¶III(B). Petitioner, however, provided no evidence of prostate problems, nor did he request any witnesses from Health Services appear to give testimony. See id. Upon conclusion of the hearing, including the written report of the BOP staff member and Petitioner's initial own admission of guilt, the DHO concluded that the greater weight of the evidence supported a finding that Petitioner had committed the prohibited act of violating BOP Disciplinary Code 110. Id. at ¶5. The DHO sanctioned Petitioner with, *inter alia*,

taking away 40 days of good conduct credit. Id. at ¶VI. The DHO noted that the sanctions were appropriate because Petitioner's conduct created an inability to implement the established drug screening policy, which provides an orderly operation where both inmates and staff can live and work in a secure environment. Id. at ¶VII. The DHO report was completed on May 2, 2008, and a copy was delivered to Petitioner on May 6, 2008. Id. at ¶IX.

### III. Standard of Review

The Court recognizes that prison disciplinary proceedings are not part of a criminal prosecution, and therefore the full panoply of rights that are due a defendant in a criminal proceeding does not apply. Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citation omitted). "In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Id.

In Wolff, the United States Supreme Court held that when a liberty interest is at stake "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Further, the Court held that "[a]t least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. The Court further explained "there must be a 'written statement by the fact finders as to the evidence

relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). "Revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454 (1985) (internal quotation and citation omitted). The "some evidence" standard is a deferential one. It does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Id. at 455-56. The Court need only consider whether there was any evidence of record that could support the conclusion reached by the prison disciplinary decisionmaker. Id.

### IV. Analysis

As set forth above, Petitioner's alleged due process claims must be measured according to the test established by the United States Supreme Court in Wolff v. McDonnell. It is not a question of whether state law or an administrative departmental policy was violated,[2] but

---

[2]It is important to note that liberty interests protected by the Fourteenth Amendment may arise either from the Constitution itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983). To assert a state-created entitlement to a liberty interest, a party must show the state placed substantive limitations on official discretion. Barfield v. Brierton, 883 F.2d 923, 935 (11th Cir. 1989). Thus, a claim that a Department of Corrections rule or regulation contains mandatory language that substantially limits prison officials' discretion, thereby creating a liberty interest, has merit. See Caraballo-Sandoval v. Honsted, 35 F.3d 521, 525 (11th Cir. 1994). However, the United States Supreme Court, in Sandin v. Conner, 515 U.S. 472, stated
(continued...)

rather the inquiry concerns whether Petitioner's allegations rise to the level of a federal constitutional violation, and whether the procedural deficiencies are ones that violate Petitioner's due process rights guaranteed to him pursuant to the Fourteenth Amendment of the United States Constitution.

The facts as set forth in the record show that Petitioner received written notice specifically including the charges against him and was informed that the hearing would not take place prior to 24 hours of the delivery of the charges. Exh. 2 at ¶9, ¶11; Exh. 3; Exh. 4. The hearing commenced on April 30, 2008, with Petitioner present, and the committee found Petitioner guilty. Exh. 5. During the hearing, Petitioner denied the charges against him, asserting for the first time that he couldn't urinate because he was having problems with his prostate. Id. at ¶III(B). Petitioner, however, provided no evidence of prostate problems, nor did he request any witnesses from Health Services appear to give testimony. See id. Upon conclusion of the hearing, including the written report of the BOP staff member and Petitioner's initial own admission of guilt, the DHO concluded that the evidence supported a finding that Petitioner had committed the

---

[2](...continued)
that while States may under certain circumstances create liberty interests which are protected by the Due Process Clause, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, at 484.

prohibited act of violating BOP Disciplinary Code 110.  <u>Id.</u> at ¶5. Based on a review of the record, it is apparent that the committee relied upon facts in supporting their initial finding of guilt and did not reach an arbitrary and capricious decision.  Plaintiff initially acknowledged that he could not urinate without further explanation. A reasonable fact finder could conclude that two hours was sufficient time to induce urination.  <u>Franklin v. McBride</u>, 92 F.3d 1187 (11th Cir. 1996).  Plaintiff later alleged that he had a medical problem that effected his ability to produce a urine sample, but did not produce any evidence to substantiate his claims (and the medical records reveal Plaintiff began complaining about the condition <u>after</u> the hearing took place).  Thus, the Court finds the Petition fails to state a Due Process Claim.

ACCORDINGLY, it is hereby

**ORDERED**:

1.  The Petition for Writ of Habeas Corpus is **DENIED.**

2.  The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking to appeal a district court's final order denying his petition writ of habeas has no absolute entitlement to appeal but must obtain a certificate of

appealability ("COA").  28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 183 (2009).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003)(citations and internal quotation marks omitted).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this   22nd   day of May, 2014.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

sa: alr
Copies: All Parties of Record